KEVIN D. SOLONSKY, D.C. Bar No. 437119
Email: solonskykd@sec.gov
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-9612
Telephone: (202) 551-5014
Facsimile: (202) 772-9263

LOCAL COUNSEL
AMY JANE LONGO, Cal. Bar No. 198304
Email: longoa@sec.gov
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

Attorneys for Respondent
Securities and Exchange Commission

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY MIGLIORINI,<br><br>　　　　Movant,<br><br>　　vs.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Respondent. | Case No. 8:20-cv-1493-CJC-DFM<br><br>**VERIFIED OPPOSITION OF RESPONDENT SECURITIES AND EXCHANGE COMMISSION TO MOTION FOR ORDER PURSUANT TO CUSTOMER CHALLENGE PROVISIONS OF THE RIGHT TO FINANCIAL PRIVACY ACT OF 1978**<br><br>Date:　　November 3, 2020<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 6B<br>Judge:　　Hon. Douglas F. McCormick |

Barry Migliorini moves this Court, pursuant to the customer challenge provisions of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. 3401 et seq., for an order quashing an investigative subpoena, issued July 23, 2020, by Securities and Exchange Commission ("SEC") staff ("Staff") to First Bank, Inc. ("First Bank"), seeking Migliorini's bank records.[1]  This Court should enforce the subpoena because the bank records sought are relevant to a legitimate law enforcement investigation.[2]

## BACKGROUND

### I.     SEC ISSUES FORMAL ORDER OF INVESTIGATION.

On April 14, 2020, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in In the Matter of Wellness Matrix Group, Inc. (C-8681) ("Formal Order").  The Formal Order directs Staff to conduct an investigation to determine whether, among other things, certain persons violated the antifraud provisions of the federal securities laws by making false statements of material fact or failing to disclose material facts in connection with the purchase, offer, or sale of Wellness Matrix Group, Inc. ("WMGR" or the "Company") securities.  The Formal Order states that the SEC has information tending to show that since June 2018, or earlier, WMGR, "its officers, directors, employees, partners, subsidiaries, and/or affiliates and/or other persons or entities" may have offered, sold, or purchased for sale securities in violation of Sections 17(a) of the Securities Act of

---

[1] As required by the RFPA, 12 U.S.C. 3410(b), the facts in this Opposition are verified by Michael Mueller, who is an attorney with the SEC's Division of Enforcement and one of the persons designated by the SEC to perform all duties in connection with this investigation.  See 15 U.S.C. 78u(b).

[2] Because financial institutions may not disclose records sought until the Government certifies in writing that it has complied with the RFPA, 12 U.S.C. § 3403(b), the filing of a customer challenge automatically stays production of the subpoenaed records.  To minimize delay to agency investigations, the RFPA requires a court to rule upon a customer challenge within seven days after the Government files its response to a motion to quash.  12 U.S.C. § 3410(b); SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 746 (1984).

1

1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 under the Exchange Act, among other provisions. These provisions prohibit "persons and entities" from using devices, schemes, or artifices to defraud, making untrue statements of material facts, and omitting to state material facts, in connection with the offer, sale, or purchase of securities. The Formal Order authorizes Staff to issue subpoenas for documents. See 15 U.S.C. 77s(b), 78u(b). Staff issued the subpoena at issue pursuant to the Formal Order.

According to a registration form WMGR filed with the SEC on February 24, 2020 ("WMGR Form 10"), WMGR was incorporated in Nevada in 2009 as K West Investment International, Ltd. Form 10, General Registration of Securities, filed February 24, 2020 (available at https://sec.report/Document/0001683168-20-000560/). The Company has changed its name and business focus several times. According to WMGR's Form 10, on June 1, 2018, the Company acquired a business known as the Wellness Matrix Company whose stated business purpose was to "develop and implement the most advanced technologies available to provide advanced healthcare and to provide advanced systems and platforms to allow customers to have access to the most secure data storage and records security available." Form 10 at 2. On June 20, 2018, the Company changed its name to WMGR and amended its articles of incorporation.

According to the WMGR Form 10, WMGR's audited financial statements show that as of April 30, 2019, WMGR had assets of $54,998, liabilities of $309,365, and no revenue for the year ending April 30, 2019. WMGR's unaudited financial statements show that WMGR also had no revenue from April 30, 2019 to January 31, 2020.

According to the WMGR Form 10, Migliorini has served as the CEO and a Director of WMGR since June 2018 and is responsible for business development and day-to-day operations. Staff has obtained information that indicates that since 2014 Migliorini was also President of the entity that ultimately became WMGR (the "WMGR Predecessor").

## II. WMGR SELLS AT-HOME COVID-19 TESTING KITS AND DISINFECTANT.

Staff has learned that from at least March 19, 2020 until approximately March 31, WMGR—through affiliated websites and George Todt, who Staff believes is an outside business consultant for WMGR[3]—offered for sale at-home COVID-19 testing kits and COVID-19 disinfectant.

Staff has also learned that on March 30, 2020, the United States House of Representatives issued an information request to WMGR. In addition, On April 2, 2020, the City of Los Angeles issued a cease-and-desist notice to WMGR related to its sale of COVID-19 testing kits. On the same date, NPR, which conducted an investigation into WMGR's COVID-19 test kit sales, reported that: (i) several customers who ordered the WMGR COVID-19 tests say they never received them and have tried to cancel their payments; and (ii) WMGR's vice president of marketing told a reporter that the company's tests are real and FDA approved.

Staff is investigating the accuracy and adequacy of statements WMGR and others made regarding COVID-19 testing kits and disinfectant.

## III. WMGR'S STOCK PRICE AND TRADING VOLUME INCREASES.

WMGR's stock is quoted as penny stock and traded on OTC Link, an over-the-counter quotation and trading system. The stock price and trading volume of WMGR increased substantially in February and March 2020 compared to trading in prior months. In the three months prior to February 25, 2020, WMGR's share price fluctuated between $0.025 and $0.053, with an average daily trading volume of 28,100 shares for the three-month period. On February 25, WMGR's share price fluctuated between $0.05 and $0.10 with a trading volume of 194,055 shares. After

---

[3] In 2005, the SEC sued Todt for securities fraud in connection with a pump and dump scheme and obtained a final judgment that permanently barred Todt from participating in any offering of a penny stock. SEC v. George A. Todt, et al., No. 05-3697 PA (C.D. Cal. Dkt. No. 102 Nov. 18, 2005); Lit. Rel. No. 19234 (May 20, 2005).

February 25, WMGR's share price fluctuated between $0.035 and $0.19 with an average daily trading volume of 86,032 shares. On March 25, WMGR's share price opened at $0.19 from the previous day's closing price of $0.09. On March 25, national and local news reports were dominated by reports of COVID-19 case increases and the lack of a self-administered test for the virus. On April 2, WMGR's share price closed at $0.11.

On April 7, 2020, the SEC announced the temporary suspension until April 22, 2020 of trading in WMGR stock, pursuant to Section 12(k) of the Exchange Act. According to an SEC Release, the SEC suspended trading:

> [B]ecause of questions that have been raised about the accuracy and adequacy of information in the marketplace relating to WMGR common stock. Those questions relate to statements WMGR made through affiliated websites and a company consultant about selling at-home COVID-19 testing kits that had been approved by the FDA.

Securities Exchange Act of 1934, Release No. 88582, April 7, 2020.

### IV. STAFF ISSUES SUBPOENA TO FIRST BANK.

On July 23, 2020, Staff issued to First Bank a subpoena seeking all bank records in the name of Barry Migliorini from January 1, 2018 (or earlier if bank records exist prior to January 1, 2018) to July 23, 2020 (the date of the subpoena). That same day, Staff sent the subpoena and a customer notice of the subpoena to Migliorini.

Staff subpoenaed Migliorini's bank records to obtain information relating to possible violations of the federal securities laws involving WMGR. Staff is seeking the records so that it can obtain a more complete picture of the conduct and transactions of WMGR and persons associated with WMGR that are being investigated. The bank records will provide Staff with information regarding the identity of persons and entities who may have been involved in the possible wrongdoing and the extent of Migliorini's and others' involvement. The records may also help Staff locate possible ill-gotten proceeds for purposes of disgorgement in the event that the SEC files an enforcement action.

On August 10, 2020, Migliorini filed a motion to quash Staff's subpoena. Migliorini concedes that the subpoena seeks documents relevant to the SEC investigation ("I make no objection to the production of any and all documents involved with the Wellness Matrix Group account" (Dkt. No. 2, Statement in Support of Motion ("Statement in Support"), at 1)), but asserts that the subpoena is "overbroad as to time period and to the transactions covered." Id. The SEC argues that the motion should be denied because Staff has a reasonable belief that the subpoenaed records are relevant to the investigation.

## ARGUMENT

### I. THE COURT SHOULD DENY THE MOTION TO QUASH BECAUSE THE SUBPOENAED RECORDS ARE RELEVANT TO A LEGITIMATE LAW ENFORCEMENT INVESTIGATION.

The RFPA provides the "sole" means by which a customer may challenge the disclosure of materials subpoenaed from the customer's bank. 12 U.S.C. 3410(e); O'Brien, 467 U.S. at 745-46 (1984). Congress intended that RFPA subpoenas would be enforced unless the customer can "'show a factual basis'" for concluding that the records sought are not relevant to a government investigation. See In re SEC Private Investigation of Application of John Doe re Certain Subpoenas ("In re John Doe"), 1990 WL 119321, *2 (S.D.N.Y. Aug. 10, 1990) (quoting Hancock v. Marshall, 86 F.R.D. 209, 211 (D.D.C. 1980)).

Accordingly, a court must deny a customer challenge to a subpoena issued pursuant to the RFPA if the Government establishes the relevance of the subpoenaed documents to a legitimate law enforcement inquiry. "Upon finding that there is a demonstrable reason to believe that the agency is conducting a legitimate law enforcement inquiry and that the records sought are relevant to that inquiry, the court 'shall deny the motion to quash.'" Sandsend Financial Consultants, Ltd v. Federal Home Loan Bank Board, 878 F.2d 875, 877 (5th Cir. 1989) (quoting 12 U.S.C. 3410(c)) (emphasis added in case); see also Grafstram v. SEC, 532 F. Supp. 1023,

1025 (S.D.N.Y. 1982).  Thus, in response to a customer challenge, the Government need only show:  (1) "a demonstrable reason to believe that the law enforcement inquiry is legitimate"; and (2) "a reasonable belief that the records sought are relevant to that inquiry."  12 U.S.C. 3410(c).

### A. THE SEC INVESTIGATION IS A LEGITIMATE LAW ENFORCEMENT INVESTIGATION.

The SEC is directly empowered by Section 20(a) of the Securities Act, 15 U.S.C. 77t(a), and Section 21(a) of the Exchange Act, 15 U.S.C. 78u(a), to undertake investigations to determine whether violations of the federal securities law have occurred.  Here, the Formal Order was entered pursuant to these statutory provisions and provides more than a "demonstrable reason to believe that the law enforcement inquiry is legitimate."  Rodriguez v. FSLIC, 712 F. Supp. 159, 162 (N.D. Cal. 1989).  See also Pennington v. Donovan, 573 F. Supp. 708, 709 (S.D. Tex. 1983) ("An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political-harassment or intimidation or otherwise in bad faith"); Dawar v. HUD, 820 F. Supp. 545, 547 n.2 (D. Kan. 1993) (same).  Migliorini does not argue otherwise.  "Congress has endowed the Commission . . . with broad power to conduct investigations—'such . . . as it deems necessary to' ferret out violations of the federal securities laws and implement regulations, whether consummated or incipient—and in that connection to call for production of relevant materials by those who seem to have them."  SEC v. Arthur Young & Co., 584 F.2d 1018, 1023 (D.C. Cir. 1978) (footnotes omitted), cert. denied, 439 U.S. 1071 (1979); Feiner v. SEC, 914 F. Supp. 2d 474, 477 (S.D.N.Y. 2012) ("there is a demonstrable reason to believe that the SEC is pursuing a legitimate investigation" because the SEC is charged by Congress with investigating possible violations of the nation's securities laws and the SEC here is conducting its investigation pursuant to a formal investigative order); see also 15 U.S.C. 77s(b), 78u(b).

## B. THE SUBPOENAED RECORDS ARE RELEVANT TO THIS LEGITIMATE LAW ENFORCEMENT INVESTIGATION.

Relevance in the RFPA context is broad, as it is whenever agency investigative subpoenas are challenged. See SEC v. Dresser Industries, 628 F.2d 1368, 1376, 1380 n.28 (D.C. Cir. 1980) (SEC investigative subpoenas should be enforced if the documents sought are "relevant or material" to an SEC inquiry); Casey v. FTC, 578 F.2d 793, 799 (9th Cir. 1978) ("FTC subpoena must be enforced if the information sought is 'not plainly incompetent or irrelevant to any lawful purpose' of the FTC"). The subpoenaed information is relevant if it "touches a matter under investigation," Sandsend, 878 F.2d at 882, or "'might throw light' on a matter germane to the Commission's inquiry." CFTC v. Catalano, 1981 U.S. Dist. LEXIS 15728, *2 (N.D. Ill. 1981); see also In re John Doe, 1990 WL 119321, at *2 ("the statute does not require the agency to show that the records are relevant but rather that there is a 'reasonable belief that the records sought are relevant'"); United States v. Wilson, 571 F. Supp. 141, 142 (S.D.N.Y. 1983) ("the RFPA requires only that financial information be relevant to a 'legitimate law enforcement inquiry,' and not relevant in a narrow, evidentiary sense").

Here, the SEC is entitled to the subpoenaed records because the SEC has a "reasonable belief that the records are relevant" to an SEC investigation into possible violations of the federal securities laws. Staff has evidence that misrepresentations regarding WMGR's products were made and that WMGR's stock price rose in connection with those misrepresentations. Staff subpoenaed the records to obtain information concerning what persons and entities were involved in making the apparent misrepresentations and in benefitting from the rise in WMGR's stock price, and the extent of their involvement. By examining, among other things, the transfers into and out of the account, Staff may obtain such information as: (1) whether Migliorini paid anyone to disseminate information about WMGR and its products; (2) whether Migliorini made or received any payments related to the increased trading volume

and/or price of WMGR stock; or (3) who had a financial stake or interest in WMGR. Additionally, the records may help Staff locate possible ill-gotten proceeds for purposes of disgorgement in the event that Staff files a securities enforcement action.

## II. MIGLIORINI'S OVERBREADTH ARGUMENT LACKS MERIT.

Migliorini argues that the subpoena is overbroad. He asserts that none of the bank records prior to May 23, 2018 and only certain bank records after May 23, 2018 are material to the investigation and should be produced to the SEC. Migliorini's arguments lack merit.

As to Migliorini's argument that all records prior to May 23, 2018 should be excluded from the subpoena, Migliorini states that:

> The scope of the subpoena should be limited to the time period beginning with my first contact involving Wellness Matrix Group on May 23, 2018, . . . The specific date is marked by the opening of an account at this bank in the name of Wellness Matrix Group.

Statement in Support at 1. Staff, however, should be entitled to bank records for a reasonable period of time prior to May 23, 2018. Staff should not have to rely on the veracity of a claim by a person being investigated.[4] That is especially true here where Staff has reason to believe that, beginning in 2014, Migliorini was the president of WMGR's predecessor. Staff needs information preceding WMGR's acquisition of the Wellness Matrix Company because transactions that occurred before the

---

[4] See Porrazzo v. SEC, 2018 WL 1598655, *5 (D. Haw., Apr. 2, 2018) (in RFPA matter, "SEC is not required to accept Movants' statements without the opportunity to confirm them through examination of the records referenced in the Contested Subpoenas"); Harrison v. SEC, 2012 WL 1313004, *10 (N.D. Ga., Aug. 3, 2012) (in RFPA matter where SEC is examining transactions relevant to SEC investigation, "SEC is not required to accept Movants' explanations in lieu of its own investigation into how and why those transactions occurred"); Neuhaus v. SEC, 2007 WL 1322340, *4 (E.D. Cal., May 4, 2007) (in RFPA matter, SEC not obligated to rely on movants' statements that certain accounts held at bank are not tied to scheme being investigated and is instead allowed to "perform inquiry to corroborate these statements").

acquisition could reveal information about persons who have an interest in WMGR generally and, more specifically, an interest in inflating the price of WMGR's shares.

Although Staff seeks documents pre-dating May 23, 2018, Staff acknowledges that the subpoena should be revised to the extent that it suggests it seeks any documents from before January 1, 2018. Accordingly, when Staff sends the bank the certificate of compliance required by the RFPA, Staff will inform First Bank that it should send Staff Migliorini's bank records, but only from January 1, 2018.[5]

As to Migliorini's argument that the subpoena should apply only to certain limited transactions, Statement at 2, the SEC should not have to rely on what Migliorini concludes are relevant bank records and what are not. Reason dictates, and the case law confirms, that it is enough for the requesting agency to demonstrate a reasonable belief that the subpoenaed records contain information relevant to its investigation, which it has done. See In re John Doe, 1990 U.S. Dist. LEXIS at *2; Catalano, 1981 U.S. Dist. LEXIS 15728 at *2 (subpoenaed information is relevant if it "'might throw light' on matters germane to the Commission's inquiry"); Carrillo Huetel, LLP v. SEC, 2011 WL 601369, *2 (S.D. Cal.) ("[a]lthough not every responsive document produced * * * may be relevant," subpoena should be enforced because "there is reason to believe that the records overall contain information relevant to the investigation"). The fact that not every record sought may turn out to be directly relevant to conduct under investigation does not make the subpoena overly broad or an illegal fishing expedition. The SEC cannot ensure that it has all of the information pertaining to the issues under investigation unless it obtains all of the records that it has subpoenaed from First Bank. The fact that an account is not in the name of WGMR or a transaction does not involve someone or some entity that Migliorini identifies as being relevant to the investigation does not mean that the

---

[5] First Bank prematurely sent Staff Migliorini's bank records electronically. Staff did not review the records and deleted them.

account or transaction is not relevant to the investigation.  The Commission needs a record of all subpoenaed transactions to trace any funds that may be relevant to its investigation.

Furthermore, Migliorini's request that a gatekeeper be assigned (whether it be Migliorini, this Court, or a "discovery master") to determine which bank records Staff is entitled to see should be denied.  Staff is entitled to receive records directly from the bank.  The RFPA does not give courts authority to limit or modify subpoenas where the SEC has satisfied the statutory standard for overcoming a motion to quash.  See, generally, Jerry T. O'Brien, 467 U.S. at 745-46.  Requiring a bank to transfer the records directly to the SEC assures that the SEC is not reliant on persons whose interests may be inconsistent with furthering the investigation, see n.6, or on persons who are not familiar with this SEC investigation and trained in investigating securities fraud to determine what documents are relevant to an SEC investigation.

## CONCLUSION

For the foregoing reasons, this Court should deny Migliorini's motion to quash the subpoena issued to First Bank and order the subpoena enforced.

Dated:  September 29, 2020            Respectfully submitted,

                                                                         */s/ Kevin D. Solonsky*
                                                                         KEVIN D. SOLONSKY
                                                                         Senior Counsel
                                                                         Securities and Exchange Commission

# CERTIFICATE OF SERVICE

I, Kevin Solonsky, certify that I have served on Barry Migliorini the following documents:

    the Verified Opposition of Respondent Securities and Exchange Commission to Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978;

    the Declaration of Michael Mueller in Support of the Verified Opposition of Respondent Securities and Exchange Commission to Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978; and

    the Proposed Order Denying the Motion for Order Pursuant to Customer Challenge Provisions of the Right to Financial Privacy Act of 1978,

by the following methods:

    By regular mail to Barry Migliorini at 7171 Warner B3, Huntington Beach, California, 92647;

    By regular mail to Barry Migliorini at 17011 Beach Blvd., 9th Floor, Huntington Beach, California 92647; and

    By email to Barry Migliorini at bgminternational5@gmail.com

By:    */s/ Kevin D. Solonsky*
        KEVIN D. SOLONSKY

Dated:    September 29, 2020